UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| KIMBERLY M. JOHNSON | CIVIL ACTION NO. 09-638 |
|---|---|
| VERSUS | JUDGE TRIMBLE |
| MAESTRI-MURRELL PROPERTY MANAGEMENT and AZALEA POINT APARTMENTS | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are two motions, filed by defendants, in the above-captioned case. The first motion seeks summary judgment as to all claims against defendants by plaintiff.[1] The second motion, also by defendants, seeks to strike a portion of plaintiff's supplemental interrogatory answers from the record or, alternatively, to preclude plaintiff from calling counsel as a witness at trial.[2] For the reasons expressed herein below, the court finds that defendants' motion for summary judgment should be GRANTED and defendants' motion to strike or to preclude attorney testimony at trial should be DENIED as MOOT.

I.   BACKGROUND

Plaintiff's suit alleges that defendants violated Title VII of the Civil Rights Act of 1964 when she was denied employment as a property manager of the Azalea Point Apartments in Baton Rouge, Louisiana because of her race.[3] Plaintiff asserts that she learned that Azalea Point was looking for a new property manager from a friend, Nickie Paul ("Paul") in December of 2006. Paul learned of the opening at Azalea Point from Stacy

---
[1] R. 41.
[2] R. 37.
[3] R. 1 at p. 1.

1

Curtis ("Curtis"), the departing property manager.[4] Curtis faxed a copy of plaintiff's resume to Azalea Point on December 19, 2006.[5]

Plaintiff alleges that she spoke with Paul and Curtis about the status of her resume on Sunday, December 14, 2006.[6] Plaintiff further alleges that Curtis completed her employment with defendants on January 8, 2007 and that, thereafter, Curtis informed Paul that plaintiff was not selected for the job because of her race, which is African-American.[7]

Specifically, plaintiff asserts that she was told by Curtis that her supervisor, Connie Kimball ("Kimball"), received plaintiff's resume and questioned Curtis about plaintiff's race. Plaintiff alleges that, when Curtis responded to Kimball's questions by stating that she thought plaintiff was an African-American, Kimball "said something like 'I don't think they are going to hire somebody who is black.'"[8] Plaintiff learned of Kimball's alleged comment from Paul, who was told by Curtis.[9]

Plaintiff filed a complaint against defendants with the Equal Employment Opportunity Commission ("EEOC") and, after investigation, the EEOC issued a determination letter finding that plaintiff had been denied employment on the basis of her race in violation of Title VII.[10] Plaintiff was issued a Right to Sue letter on May 12, 2009,

---

[4] Id. at p. 3.
[5] Copy of plaintiff's faxed resume [R. 45-3] showing that it was faxed from Hancock Bank's CitiPlace Branch in Baton Rouge, Louisiana, where Paul was employed, on December 19, 2006 at 11:11 a.m.
[6] R. 1 at p. 3. The court notes that there appears to be a discrepancy as to the date plaintiff's resume was faxed and the date she inquired about the status of her application for employment, since plaintiff would not likely inquire about the status of her application before she actually applied for the job.
[7] Id.
[8] Affidavit of Curtis [R. 45-1] at pp. 1-2.
[9] R. 1 at pp. 3-4.
[10] R. 47-2. Plaintiff asserts that defendants failed to produce certain requested documents to the EEOC, but does not request additional discovery under Fed. R. Civ. P. 56(d). Outside of such a request, we find the arguments advanced by plaintiff to be irrelevant to the issue of plaintiff's prima facie case.

after the conciliation process proved unsuccessful. Plaintiff filed suit against Azalea Point and its owner, Maestri Murrell Property Management ("MMPM") on August 12, 2009.[11]

Defendants' motion for summary judgment alleges that plaintiff is unable to demonstrate a prima facie case of discrimination and that, even if a prima facie case were made, it has articulated legitimate, non-discriminatory reasons for its decision not to hire plaintiff.

## II. APPLICABLE STANDARDS

As recently amended, Fed. R. Civ. P. 56(a) provides, in part, that

> [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[12]

Once the movant makes such a showing, the burden shifts to the nonmoving party to show that summary judgment is not appropriate by pointing to specific factual allegations which, when taken as true by the court for purposes of the motion, demonstrate that a genuine issue remains for trial.[13] An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[14]

All evidence produced in support of or in opposition to the motion must be of the sort which would be admissible at the trial of the merits.[15] The court will construe the evidence in the light most favorable to the nonmoving party in that, when faced with specific factual averments by the nonmoving party that contradict specific factual averments by the movant, the court will deny summary judgment.

---

[11] R. 1.
[12] Fed. R. Civ. P. 56 was amended, effective December 1, 2010, but such amendment did not make substantive changes to the summary judgment standard. See advisory committee comments to Rule 56 (2010 amendments).
[13] Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);
[14] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) citing Anderson, 477 U.S. at 248.
[15] Fed. R. Civ. P. 56(c)(2).

When confronted with a motion for summary judgment, the nonmoving party may not successfully preserve its claim by resting on the pleadings, but instead, must offer evidence in the form of affidavits, deposition testimony, answers to interrogatories and documents supporting such specific factual allegations.[16] Conclusory allegations unsupported by evidence will not suffice. The nonmoving party must demonstrate more than some "metaphysical doubt" as to the material facts.[17] Where the record, taken as a whole could not support a rational trier of fact's finding for the nonmoving party, there is no genuine issue for trial.[18]

## III. ANALYSIS

Defendants' motion first asserts that plaintiff is unable to demonstrate a prima facie case of discriminatory failure to hire under Title VII and, for that reason, her claims should be dismissed.

Title VII of the Civil Rights Act of 1964 prohibits an employer from, among other things, failing or refusing to hire any person because of the person's race, color, religion, sex or national origin.[19] A plaintiff may attempt to prove a claim under Title VII by direct or circumstantial evidence.[20] When the plaintiff employs only circumstantial evidence in support of his claim, the court evaluates the claim under the well-established <u>McDonnell Douglas</u> burden-shifting framework.[21]

---

[16] Fed. R. Civ. P. 56(c)(1).
[17] <u>Matsushida Elec. Indus. Co. v. Zenith Radio Corp.</u>, 477 U.S. 242 (1986).
[18] <u>Id.</u>
[19] 42 U.S.C.A. § 2000e-2(a)(1).
[20] <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003) (finding that Title VII contains no instruction dictating departure from the "conventional rule of civil litigation" requiring plaintiffs to prove all claims by a preponderance of the evidence, which may be either direct or circumstantial).
[21] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>West v. Nabors Drilling USA, Inc.</u>, 330 F.3d 379 (5th Cir. 2003); <u>LaPierre v. Benson Nissan, Inc.</u>, 86 F.3d 444 (5th Cir. 1996); <u>Norris v. Hartmarx Specialty Stores</u>, 913 F.2d 253 (5th Cir. 1990) (<u>McDonnell Douglas</u> framework applies in failure to hire cases under Title VII).

Under McDonnell Douglas, the plaintiff must first demonstrate a prima facie case of discrimination. Where, as here, the plaintiff alleges discriminatory failure to hire, plaintiff must demonstrate the following:

    (1)    that she is a member of a protected class;
    (2)    that she sought and was qualified for an available position;
    (3)    that she was rejected for that position; and
    (4)    that the employer continued to seek applicants with plaintiff's qualifications.[22]

If the plaintiff successfully demonstrates the elements of the prima facie case, the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for its refusal to hire plaintiff.[23] The prima facie case creates a presumption of discrimination by the defendant employer.[24] In order to rebut this presumption, the defendant employer must articulate a legitimate, non-discriminatory explanation for the failure to hire plaintiff.[25] If the employer successfully articulates such an explanation, the presumption created by the prima facie case ceases to operate. At that point, the plaintiff may only preserve his claim by demonstrating that, either the employer's proffered explanation is merely pretext for impermissible discrimination, or the employer's proffered reason, while true is not the actual motivating factor as to the refusal to hire.[26] The ultimate burden of demonstrating that the defendant employer intentionally discriminated against plaintiff on the basis of race remains, at all times, with the plaintiff.[27]

---

[22] Johnson v. Louisiana, 351 F.3d 616, 621-22 (5th Cir. 2003) citing McDonnell Douglas, 411 U.S. at 802.
[23] Scales v. Slater, 181 F.3d 703 (5th Cir. 1999) citing Texas Dep't. of Comm. Affairs v. Burdine, 450 U.S. 248 (1981) and McDonnell Douglas, 411 U.S. at 802.
[24] Johnson, 351 F.3d at 622 citing, inter alia, U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711 (1983).
[25] St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) citing Burdine, 450 U.S. at 254.
[26] Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007) citing Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004).
[27] Price v. Fed. Exp. Corp., 283 F.3d 715 (5th Cir. 2002) citing Vadie v. Miss. St. Univ., 218 F.3d 365 (5th Cir. 2000) and Reeves v. Sanderson Plumping Products, Inc., 530 U.S. 133, 143 (2000).

While rare, it is also possible for a plaintiff to demonstrate direct evidence of failure to hire based on race.[28] Direct evidence is that which, if deemed credible by the trier of fact, proves the occurrence of discrimination without the need for inference.[29] When a plaintiff comes forward with direct evidence of discrimination, the McDonnell Douglas analysis is inapplicable.[30] Once the plaintiff has established the fact of discrimination via direct evidence, the defendant employer may defend against the claim only by proving by a preponderance of the evidence that the employer would have acted in the same manner even without consideration of the impermissible criteria, such as race.[31]

Defendants' instant motion asserts that plaintiff is unable to demonstrate that she was qualified for selection as the property manager at Azalea Point.[32] Defendants point to the testimony of Kimball and Curtis to the effect that MMPM was looking for applicants with prior property management or related experience and, at the time plaintiff submitted her resume, had already rejected applicants who did not possess such experience.[33] Defendants also point out that Kimball desired candidates who did not "skip around from job to job," but, instead, showed longevity in their prior employment.[34] Finally, defendants assert that a qualified applicant must have been truthful in their representations via resume and application.[35]

---

[28] Scales, 181 F.3d at 709 citing LaPierre, 86 F.3d at 449.
[29] Kendall v. Block, 821 F.2d 1142 (5th Cir. 1987).
[30] Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 622 (1985) citing Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir. 1979).
[31] Vaughn v. Edel, 918 F.2d 517, 521 (5th Cir. 1990) quoting Guillory v. St. Landry Parish Police Jury, 802 F.2d 822, 824 (5th Cir. 1986).
[32] R. 41-10 at pp. 11-14. The court also notes that the parties agree that plaintiff is a member of a protected class as an African-American.
[33] R. 41-10 at p. 11.
[34] Id. at p. 12.
[35] Id. at pp. 12-13.

Defendants assert that plaintiff's resume does not reflect the type of experience that would have qualified her for the job as property manager. Plaintiff argues that defendants did not sufficiently articulate what management experience they were looking for and that plaintiff's qualifications were not taken into account at all, so this factor should not weigh against plaintiff.[36] Plaintiff also points out that the candidate eventually selected for the job possessed no such management experience.[37]

Testimony by Kimball indicates that she was looking for someone with property management or related experience.[38] Plaintiff produces no relevant evidence to refute this assertion. Although Jamie Cedetol ("Cedetol"), who was eventually selected for the job at issue, may not have possessed such experience, Cedetol's qualifications are irrelevant as we will discuss below.

Plaintiff argues that defendants have no set list of qualifications for the job of assistant property manager and, thus, cannot show that she is unqualified. The court agrees insofar as defendants have only shown, through her own testimony, what Kimball thought were necessary qualifications. Defendants offer no official job description listing required qualifications. Plaintiff's resume contains one entry that might be construed as "property management or related experience" in that it reflects that she was employed at Rigsby Fredrick Gallery and Salon from May 1998 until October 2002 as a "Sales Mgr./Client Coordinator."[39]

---

[36] R. 45 at pp. 4-7.
[37] Id. at p. 5.
[38] Deposition of Kimball [R. 41-3] at 139:18-140:4.
[39] R. 45-3. The court notes, however, that there is some discrepancy as to whether or not plaintiff was truthful in her representations regarding her employment history and, in particular, her employment with Rigsby Fredrick and other employers.

7

Neither party asserts that defendants conducted interviews of each applicant who submitted a resume or that they checked plaintiff's references. For that reason, we must evaluate plaintiff's qualifications as they appear on the face of her resume. Thus, construing the evidence in the light most favorable to plaintiff as the non-moving party, we are unable to find that plaintiff was unqualified for the position of assistant property manager on the face of her resume.

Defendants' motion next asserts that plaintiff is unable to demonstrate that she was rejected for the position. Defendant contends that, while Kimball was in the process of accepting applications for the job, Lisa Theriot ("Theriot"), Kimball's supervisor, approached Linda Jackson ("Jackson"), a supervisor above both Kimball and Theriot, about hiring Theriot's daughter, Cedatol, for the assistant manager position at Azalea Point. Kimball testified that Theriot simply informed her that the decision had been made to hire Cedatol.[40]

Plaintiff argues that her application was rejected before the decision to hire Cedatol was made, so the matter of who actually made the decision to hire Cedatol is irrelevant. The evidence before the court demonstrates that plaintiff's resume was submitted to defendants via facsimile on December 19, 2006.[41] Plaintiff points out that Cedatol began her employment on January 8, 2007, but Jackson states that, though she is the person who made the ultimate decision to hire Cedatol, she does not remember the exact date when that decision was made.[42] Plaintiff asserts that, since defendant cannot show that Cedatol was hired prior to Kimball's alleged discriminatory comment, the court must construe the

---

[40] R. 41-3 at 45:20-46:1.
[41] R. 45-3.
[42] See affidavit of Jackson [R. 41-6] at p. 2.

evidence in favor of plaintiff having demonstrated that her application was rejected.[43] The court disagrees.

As discussed above, plaintiff bears the burden of establishing a prima facie case of discrimination under Title VII. Therefore, it is not incumbent upon defendant to refute an unsupported allegation of rejection. Instead, plaintiff must produce evidence that demonstrates rejection. The unrefuted evidence before the court establishes that, at some point during the application review process, Theriot obtained permission from Jackson to hire Cedatol and, thus, the hiring decision was removed from Kimball's purview and exercised by Theriot. Plaintiff makes no showing that this occurred after Kimball's alleged remark and, further, makes no showing that Theriot or Jackson were aware of plaintiff's application at the time the decision was made. Plaintiff has not met her burden of proof as to the element of rejection. Although we might end our analysis there, we continue forward out of an abundance of caution.

Defendants' motion next asserts that plaintiff has made no showing that defendants continued to seek applicants with plaintiff's qualifications after her rejection.[44] Our consideration of this element is related to the prior element of rejection in that plaintiff offers no evidence, other than the date her resume was transmitted, as to rejection, which necessarily must precede a continued search by defendants for applicants. Under these circumstances, we agree with defendants that plaintiff offers no evidence as to this factor and, for that reason, fails to carry her burden of proof as to this element of her prima facie case.

---

[43] R. 45 at p. 12.
[44] R. 41-10 at pp. 16-17.

9

Finding as we have above that plaintiff has not successfully established a prima facie case of discriminatory hiring under Title VII, we might also end our analysis here. We will continue, however. Were we to assume that plaintiff has successfully established a prima facie case of discrimination, the burden would shift to defendants under the McDonnell Douglas framework. We proceed as though this were the case.

Defendants assert that, even if the court finds that a prima facie case of discrimination has been demonstrated, defendants have articulated a legitimate, non-discriminatory reason for their decision not to hire plaintiff.[45] More specifically, defendants aver that, though perhaps a poor decision in hindsight,[46] Cedatol was selected for the job by way of nepotism. Cedatol's mother, Theriot, requested that Cedatol be hired because she had prior experience at the Varn Villa apartments and because she was Theriot's daughter.

Plaintiff addresses this facet of the McDonnell Douglas analysis by stating that defendants' decision to hire Cedatol was made after plaintiff's application was rejected on the basis of her race.[47] Plaintiff again argues that, since defendants have not proven that the decision to hire Cedatol was made before Kimball's alleged comment, defendants' motion must fail.[48]

It is well established that not every rejection of a minority candidate for employment constitutes a violation of Title VII.[49] The evidence before this court,

---

[45] Id. at pp. 17-18.
[46] Though not relevant to the issues now before the court, testimony by Kimball and Jackson suggests that both Theriot and Cedatol were both eventually terminated for violation of certain policies and, in Cedatol's case, alleged theft. See R. 41-3 at 46:7-15; R. 41-38:13-39:14.
[47] R. 45 at pp. 12-13 ("The non-discriminatory reason for the hiring of Cedatol came *AFTER* Ms. Johnson had been rejected on the basis of her race").
[48] Id.
[49] Cunningham v. Housing Authority of City of Opelousas, 764 F.2d 1097 (5th Cir. 1985) (Fifth Circuit found no error in district court's conclusion that the actual reason for plaintiff's rejection for prospective promotion was the

uncontested by plaintiff, is that Cedatol was selected for the job to the exclusion of all other candidates because of nepotism. While we find defendants' decision to be, perhaps, a poor one in hindsight, we find that defendants have articulated a legitimate, non-discriminatory reason for their selection of Cedatol over plaintiff, if plaintiff is assumed to have been rejected at all. Thus, were we to find that plaintiff met her prima facie burden of proof, we would also find that defendants have successfully rebutted the presumption of discrimination as required under McDonnell Douglas.

Were we to continue further, we would reach the issue of pretext. Under McDonnell Douglas, once the employer articulates a legitimate, nondiscriminatory reason for the rejection of plaintiff for employment, plaintiff may produce evidence that the proffered reason is merely pretext for impermissible discrimination or that the reason, while true, is not the actual motivating factor for the employment decision at issue.

Plaintiff asserts that the affidavit of Curtis, stating that she heard Kimball say "something like 'I don't think they are going to hire somebody who is black'" is evidence that defendants' proffered explanation for the selection of Cedatol over plaintiff is merely pretext for race discrimination.[50] Defendants argue that, even when taken as true, Kimball's alleged statement is merely a "stray remark" and not sufficient to enable a reasonable fact finder to infer pretext. Defendants also assert that Kimball was not the decision maker and, thus, any alleged comment by her is causally unrelated to the decision to hire Cedatol.

---

repayment of a political favor and not sex discrimination as alleged); Wright v. West Elec. Co., 664 F.2d 959 (5th Cir. 1981) (failure to hire a minority candidate based on an incorrect assessment of that candidate's capabilities is not a violation of Title VII).
[50] R. 45-1.

The court first notes that the only evidence of the single, alleged, discriminatory comment by Kimball is the testimony of Curtis. It appears, therefore, that plaintiff's ability to demonstrate pretext is largely dependent upon whether or not the jury finds Curtis' rendition of the alleged comment credible. As a court presiding only in summary judgment at this point, we are not entitled to weigh such evidence, but note that it will be plaintiff's burden to prove that the comment was, in fact, made.

Turning to defendants' argument that Kimball was not the decision maker, the court finds that this is not entirely supported by the evidence. Defendants do not assert that Kimball did not have the authority to hire or to recommend a candidate, but only that, in this case, she was cut short by the intervention of a higher level supervisor. Thus, we reject that portion of defendants' argument. We do agree, however, that, because plaintiff has failed to demonstrate that the decision to hire Cedatol was made after the occurrence of the alleged discriminatory comment, plaintiff has failed to demonstrate a causal connection between such remark and defendants' selection of Cedatol for the job.[51]

As previously stated, we find that plaintiff fails to establish the requisite prima facie case of discrimination under Title VII and, thus, our observations past that point are made merely in an abundance of caution. Plaintiff's claims against defendants should be denied and dismissed for want of prima facie evidence. Given this finding, we conclude that defendants' motion to strike or to prevent plaintiff from calling counsel as a witness at trial should be denied as moot. The court will issue a judgment in conformity with these findings.

---

[51] Boyd v. State Farm Ins. Companies, 158 F.3d 326, 329-30 (5th Cir. 1998) citing Anderson v. Douglas & Lomason Co., Inc., 26 F.3d 1277, 1295 (5th Cir. 1994), Ray v. Tandem Computers, 63 F.3d 429, 434 (5th Cir. 1995).

Alexandria, Louisiana
August 29, 2011
~~September ___, 2011~~

~~JUDGE~~

[signature]
JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE